UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 24-CV-380

| | |
|---|---|
| C.M., *a minor through his parents*, LEAH McGHEE *and* CHAD McGHEE,<br><br>*Plaintiff*,<br><br>v.<br><br>DAVIDSON COUNTY BOARD OF EDUCATION; *and* ERIC R. ANDERSON, *in his individual capacity*,<br><br>*Defendants*. | ***AMICUS CURIAE*** **BRIEF OF THE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## CORPORATE DISCLOSURE STATEMENT

Pursuant LR 7.5(e), *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute.

Dated: June 25, 2024                     Respectfully submitted,

                                              /s/ Gina M. D'Andrea

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iv

IDENTITY AND INTEREST OF AMICUS CURIAE ................................................................. vi

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

   I.   "ALIEN" IS THE CORRECT LEGAL AND FACTUAL TERM. .................................... 1

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023) ............................................................... 12

*Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981) .................................. 10

*Carcamo v. Holder*, 713 F.3d 916 (8th Cir. 2013) ........................................................... 10

*City of Indianapolis v. Edmond*, 531 U.S. 32 (2000)......................................................... 8

*Flores v. United States Citizenship & Immigration Servs.*, 718 F.3d 548 (6th Cir. 2013) ........... 10

*Garland v. Dai*, 141 S. Ct. 1669 (2021)....................................................................... 5

*Gaye v. Lynch*, 788 F.3d 519 (6th Cir. 2015) ................................................................ 9

*Jean-Louis v. United States AG*, NO. 20-12082, 2021 U.S. App. LEXIS 20408 (11th Cir. July 9, 2021) ......................................................................................................... 5

*Lopez-Esparza v. Holder*, 770 F.3d 606 (7th Cir. 2014) ..................................................... 9

*Miller v. Albright*, 523 U.S. 420 (1998)....................................................................... 5

*Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022) .......................................................... 5

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) ................................................................... 4

*Rivera v. United States AG*, No. 20-13201, 2021 U.S. App. LEXIS 20217 (11th Cir. July 8, 2021) ......................................................................................................... 5

*Saldana v. Lahm*, 2014 U.S. Dist. LEXIS 177447 (D. Neb. Feb. 12, 2014) ................................ 6

*Texas v. United States*, 787 F.3d 733 (5th Cir. 2015)................................................... 8, 9

*Trump v. Hawaii*, 585 U.S. 667 (2018)....................................................................... 10

*Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015) ............................................................. 9

*United States v. Atienzo*, 2005 U.S. Dist. LEXIS 31652 (D. Utah Dec. 6, 2005) ........................ 8

*United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 58 (2013) .. 9

*United States v. Davidson*, 567 Fed. Appx. 90 (3d Cir. 2014) ........................................... 9

*United States v. Gonzales*, 2008 U.S. Dist. LEXIS 9997 (N.D. Miss. Jan. 15, 2008).................... 8

*United States v. Kendrick*, 682 F.3d 974 (11th Cir. 2012)............................................... 10

*United States v. Liriano*, 761 F.3d 131 (1st Cir. 2014).................................................... 9

*United States v. Paetsch*, 782 F.3d 1162 (10th Cir. 2015)............................................... 10

*United States v. Reyes*, 772 F.3d 1152 (9th Cir. 2014)................................................... 10

## Statutes

8 U.S.C. § 1101(a)(3) .................................................................................................. 4, 6

8 U.S.C. § 1229a(a)(1) .................................................................................................... 6

8 U.S.C. § 1365(b) .......................................................................................................... 6

Naturalization Act of 1790, ch. 3, 1 Stat. 103 ................................................................. 3

## Other Authorities

*Black's Law Dictionary*, "Alien" (11th ed. 2019) ............................................................ 4

Bryan A. Garner, Garner's Dictionary of Legal Usage 912 (Oxford 3d ed. 2011) ......... 8

Letter from James Madison to Edmund Randolph (Aug. 27, 1782), in 1 Writings of James Madison 226 (G. Hunt ed. 1900) ................................................................................ 4

The Federalist No. 42, pp. 269-71 (C. Rossiter ed. 1961) (J. Madison) ......................... 4

## Internet

Eduardo Porter, *Illegal Immigrants are Bolstering Social Security with Billions*, The New York Times, Apr. 5, 2005, available at: http://www.nytimes.com/2005/04/05/business/illegal-immigrants-are-bolstering-social-security-with-billions.html ...................................... 6

National Archives, *Milestone Documents: Alien and Sedition Acts (1798)*, available at: https://www.archives.gov/milestone-documents/alien-and-sedition-acts#:~:text=As%20a%20result%2C%20a%20Federalist,imprisonment%2C%20and%20deportation%20during%20wartime ................................................................................ 4

# IDENTITY AND INTEREST OF AMICUS CURIAE

*Amicus curiae* the Immigration Reform Law Institute ("IRLI") seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion.[1] IRLI is a not for profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases. IRLI has also represented a wide variety of plaintiffs in immigration matters, ranging from American workers who have been displaced by foreign workers to foreign workers who have not been paid by their employers. Consequently, IRLI is dedicated to assisting the courts in maintaining a rational immigration system for the benefit of its clients.

---

[1] Consistent with LR 7.5(d), counsel for *amicus curiae* authored this brief, and the motion it accompanies, in whole, and no counsel for a party authored the brief in whole or in part, nor did any person or entity, other than the *amicus* and its counsel, make a monetary contribution to preparation or submission of the brief.

# INTRODUCTION

There has been a push in recent years to ban the term "alien," and, more specifically, "illegal alien." As replacements, such terms as "undocumented immigrant" or "noncitizen," both of which are factually and legally incorrect, are urged. The increased use of these inaccurate terms is of particular concern to those who care about the integrity of America's borders and its immigration system in general. Such anodyne terms may seem harmless, but their use creates both confusion in the legal system and the implication that violating U.S. immigration law is not a serious action with a serious consequence. Use of proper legal terms is essential to the administration of immigration law in the United States.

In this case, plaintiff is a minor student who was suspended from school for asking his teacher to distinguish between extra-terrestrial aliens and aliens who are human. Doc. 8 at 7. His use of the term "alien" to refer to the human variety was deemed a racial slur by both the school and the Davidson County Board of Education. *Id*. *See also* Doc. 1 at ¶ 3. IRLI writes in support of Plaintiff's constitutional arguments, buttressing them with the following showing the propriety of using the term "alien" when discussing immigration.

# ARGUMENT

## I. "ALIEN" IS THE CORRECT LEGAL AND FACTUAL TERM.

"Alien" is a legal term of art that has been used for over a century in United States immigration law. *See, e.g.*, Naturalization Act of 1790, ch. 3, 1 Stat. 103 (establishing citizenship procedures for "alien[s]"); National Archives, *Milestone Documents: Alien and Sedition Acts (1798)*, available at: https://www.archives.gov/milestone-documents/alien-and-sedition-

1

acts#:~:text=As%20a%20result%2C%20a%20Federalist,imprisonment%2C%20and%20 deportation%20during%20wartime (last visited June 14, 2024). Indeed, the term predates the U.S. Constitution, as seen in a 1782 letter from James Madison to Edmund Randolph, in which Madison discussed immigration laws as necessary to prevent "the intrusion of obnoxious aliens[.]" Letter from James Madison to Edmund Randolph (Aug. 27, 1782), in 1 Writings of James Madison 226 (G. Hunt ed. 1900); accord The Federalist No. 42, pp. 269-71 (C. Rossiter ed. 1961) (J. Madison)). The term "alien" was not a pejorative one, as Madison's need to append the word "obnoxious" to indicate his meaning shows.

Far from being a pejorative today, the term alien rests on the proper interpretation and application of U.S. immigration law. The term was clearly defined by Congress in the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."). According to Black's Law Dictionary, an alien is

> [s]omeone who resides within the borders of a country but is not a citizen or subject of that country; a person not owing allegiance to a particular country. In the United States, an alien is a person who was born outside the jurisdiction of the United States, who is subject to some foreign government, and who has not been naturalized under U.S. law.

*Black's Law Dictionary*, "Alien" (11th ed. 2019). Use of the term is important because, as Justice Alito explained, "'[a]lien' is the term used in the relevant provisions of the INA, and *this term does not encompass all noncitizens*." *Moncrieffe v. Holder*, 569 U.S. 184, 210 n.10 (2013) (Alito, J., dissenting) (emphasis added). "Nationality and citizenship are

2

Case 1:24-cv-00380-LCB-LPA   Document 32   Filed 07/19/24   Page 8 of 19

not entirely synonymous; one can be a national of the United States and yet not a citizen." *Miller v. Albright*, 523 U.S. 420, 467 n.2 (1998).

Use of the term "alien" is proper "because Congress used it in the text of the applicable statutes, and the same term is used in the applicable regulations. [The court's] use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the plaintiffs in this action or others challenging their detention under our immigration laws." *Miranda v. Garland*, 34 F.4th 338, 345 n.1 (4th Cir. 2022). As explained by the Eleventh Circuit:

> Each time the majority uses the term 'alien' . . . its use of the term is grounded in the text of the Immigration and Nationality Act ('INA'). As it is not our role to 'fix' the text of the INA, we should not stray into legislative draftsmanship. Further, if we were to substitute the term 'alien' for 'noncitizen' in reference to specific statutory provisions, we risk stating the law inaccurately.

*Rivera v. United States AG*, No. 20-13201, 2021 U.S. App. LEXIS 20217, at *21-22 (11th Cir. July 8, 2021). Despite the fact "that, on occasion, the Supreme Court has used the term 'noncitizen' rather than 'alien' in its general discussion of our country's immigration laws[,] . . . more recently, Supreme Court precedent has confirmed that the term 'alien' remains appropriate." *Jean-Louis v. United States AG*, NO. 20-12082, 2021 U.S. App. LEXIS 20408, at *6 n.1 (11th Cir. July 9, 2021) (citing *Garland v. Dai*, 141 S. Ct. 1669, 1680 (2021)).

Despite the historical and legal use of the term, there has been a push to replace the terms "alien" and "illegal alien" in favor of terms such as "noncitizen" or "undocumented immigrant." Such terms, however, are legally and factually incorrect. "Undocumented" is

factually incorrect because many illegal aliens possess documents, either from their own country (birth certificates, passports, matricula consular ID cards, and so on) or stolen, fake, or fraudulent United States citizen or legal resident documents (falsified Social Security cards, forged drivers' licenses, counterfeit green cards, and so on). Indeed, as far back as 2005, the Social Security Administration estimated that seventy five percent of illegal aliens already possessed stolen or fraudulent Social Security numbers. *See* Eduardo Porter, *Illegal Immigrants are Bolstering Social Security with Billions*, The New York Times, Apr. 5, 2005, available at: http://www.nytimes.com/2005/04/05/business/illegal-immigrants-are-bolstering-social-security-with-billions.html (last visited June 12, 2024). Furthermore, an alien may possess documents provided by U.S. immigration officials, such as a Notice to Appear, and still be considered an illegal alien. *See* 8 U.S.C. § 1229a(a)(1). *See also Saldana v. Lahm*, 2014 U.S. Dist. LEXIS 177447, *8 n.1 (D. Neb. Feb. 12, 2014) ("The Court uses the term 'illegal alien,' because that is the language employed by Congress in those sections of the United States Code dealing with immigration matters. The term is more specific than 'undocumented persons,' because many persons possessing certain documentation may nonetheless be 'illegal aliens' as a matter of law.").

Second, the term "undocumented" is legally incorrect. As stated, the term "alien" is a legal term of art used by Congress in the INA to describe a person who is not a citizen or national of the United States. *See* 8 U.S.C. § 1101(a)(3). The term "illegal alien" is a legal term of art used by Congress to describe aliens who have either illegally entered the United States or violated the terms of their admission by, for example, overstaying a visa. *See*, *e.g.*, 8 U.S.C. § 1365(b) (defining an illegal alien as "any alien convicted of a felony who

4

is in the United States unlawfully and (1) whose most recent entry into the United States was without inspection, or (2) whose most recent admission to the United States was as a nonimmigrant and (A) whose period of authorized stay as a nonimmigrant expired or (B) whose unlawful status was known to the Government, before the date of the commission of the crime for which the alien is convicted."). Title V of The Immigration Reform and Control Act of 1986, which deals with law enforcement, contains five references to "illegal alien" alone, while the term "undocumented" is not mentioned once.

Furthermore, most courts have declared "illegal alien" the correct terminology. For example, the U.S. Court of Appeals for the Fifth Circuit stated:

> There is some confusion—not necessarily in this case but generally—regarding the proper term for non-citizens who are in the United States unlawfully. The leading legal lexicographer offers the following compelling explanation:
>
> "The usual and preferable term in [American English] is *illegal alien*. The other forms have arisen as needless euphemisms, and should be avoided as near-gobbledygook. The problem with *undocumented* is that it is intended to mean, by those who use it in this phrase, 'not having the requisite documents to enter or stay in a country legally.' But the word strongly suggests 'unaccounted for' to those unfamiliar with this quasi-legal jargon, and it may therefore obscure the meaning.
>
> More than one writer has argued in favor of *undocumented alien* . . . [to] avoid[ ] the implication that one's unauthorized presence in the United States is a crime . . . . But that statement is only equivocally correct: although illegal aliens' presence in the country is no crime, their *entry* into the country is. . . . Moreover, it is wrong to equate illegality with criminality, since many illegal acts are not criminal. *Illegal alien* is not an opprobrious epithet: it describes one present in a country in violation of the immigration laws (hence 'illegal')."

5

*Texas v. United States*, 787 F.3d 733, 745 n.15 (5th Cir. 2015) (quoting Bryan A. Garner, Garner's Dictionary of Legal Usage 912 (Oxford 3d ed. 2011)) (emphasis in original). *See also United States v. Gonzales*, 2008 U.S. Dist. LEXIS 9997, *19, 20 (N.D. Miss. Jan. 15, 2008) ("The Defendants move to remove from the Indictment the term 'illegal alien' and to preclude use of that term during trial, arguing that the term is racially charged. The court concludes that this motion is without merit since 'illegal alien' is a term commonly used by the courts. *E.g.*, *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002); *Zadvydas v. Davis*, 533 U.S. 678, 716, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *I.N.S. v. St. Cyr*, 533 U.S. 289, 341, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001); *City of Indianapolis v. Edmond*, 531 U.S. 32, 33, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 46, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (2000); *U.S. v. Sanchez-Hernandez*, 507 F.3d 826, 833 (5th Cir. 2007); *U.S. v. Sanchez-Ramirez*, 497 F.3d 531, 533 (5th Cir. 2007); *U.S. v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007). Furthermore, the term accurately describes the concept of a person who is not a citizen or lawful resident of the United States and who is in the United States illegally."); *United States v. Atienzo*, 2005 U.S. Dist. LEXIS 31652 (D. Utah Dec. 6, 2005) (finding the term "illegal alien" is not a "pejorative" term, citing "the nation's leading legal stylist—Brian Garner—who explains in his authoritative Dictionary of Modern Legal Usage that 'illegal alien' is the legally precise and preferred term").

The Supreme Court of the United States and every federal circuit court of appeals use the term, as well. *See*, *e.g.*, *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) ("We have also upheld brief, suspicionless seizures of motorists at a fixed Border Patrol

6

Case 1:24-cv-00380-LCB-LPA   Document 32   Filed 07/19/24   Page 12 of 19

checkpoint designed to intercept *illegal aliens* and at a sobriety checkpoint aimed at removing drunk drivers from the road.") (emphasis added) (citations omitted); *United States v. Liriano*, 761 F.3d 131, 134 (1st Cir. 2014) ("The Reservation, which cannot be patrolled by federal agents, is known to authorities as a popular location for smuggling *illegal aliens* and myriad types of contraband, ranging from tobacco to drugs and weapons.") (emphasis added); *Turkmen v. Hasty*, 789 F.3d 218, *37 n.16 (2d Cir. 2015) ("We note that the Ninth Circuit has declined to provide *illegal aliens* with an implied Bivens remedy for unlawful detention during deportation proceedings.") (emphasis added); *United States v. Davidson*, 567 Fed. Appx. 90, 94 (3d Cir. 2014) ("Given that no one other than Delva and the *illegal aliens* were identified as having traveled in Davidson's car, it would have been reasonable for the jury to conclude that the 'friend' Davidson referred to was Delva.") (emphasis added); *United States v. Carpio-Leon*, 701 F.3d 974, 976 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 58 (2013) ("On Carpio-Leon's Second Amendment challenge, we conclude that the scope of the Second Amendment does not extend to provide protection to *illegal aliens*, because *illegal aliens* are not law-abiding members of the political community and aliens who have entered the United States unlawfully have no more rights under the Second Amendment than do aliens outside of the United States seeking admittance.") (emphasis added); *Texas v. United States of America*, 787 F.3d 733, 745 n.15 (5th Cir. 2015) (see above); *Gaye v. Lynch*, 788 F.3d 519, 522 (6th Cir. 2015) ("Petitioner Babacar Gaye is an *illegal alien* who seeks relief from a removal order entered against him.") (emphasis added); *Lopez-Esparza v. Holder*, 770 F.3d 606, 607 (7th Cir. 2014) ("The stop led to the discovery that he was an *illegal alien*, and the institution of

removal proceedings.") (emphasis added); *Carcamo v. Holder*, 713 F.3d 916, 921 n.3 (8th Cir. 2013) ("For the purposes of this opinion, we assume, without deciding, the Fourth Amendment protects *illegal aliens* within the United States.") (emphasis added); *United States v. Reyes*, 772 F.3d 1152, 1154 n.1 (9th Cir. 2014) ("We use the term 'illegal aliens' because that is the terminology used in the indictment, plea agreement, and judgment of conviction."); *United States v. Paetsch*, 782 F.3d 1162, 1169 (10th Cir. 2015) ("For example, the Court has upheld a border patrol roadblock designed to intercept *illegal aliens*.") (emphasis added) (citation omitted); *United States v. Kendrick*, 682 F.3d 974, 978-979 (11th Cir. 2012) ("Both sets of charges arose in connection with an incident . . . when U.S. Coast Guard personnel boarded a vessel . . . off the coast of Florida, and discovered a firearm, 900 pounds of marijuana, and a previously deported *illegal alien* named Robert Harding.") (emphasis added); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1213 n.2 (D.C. Cir. 1981) ("The term 'illegal alien' refers to a foreign national who enters or remains in the United States in violation of 8 U.S.C. §§ 1101-1503 (Supp. III 1979).").

In fact, even courts that disagree with use of the term "alien" recognize that its use is necessary "to be consistent with the statutory language and to avoid any confusion in replacing a legal term of art with a more appropriate term." *Flores v. United States Citizenship & Immigration Servs.*, 718 F.3d 548, 551 n.1 (6th Cir. 2013), overruled in part by *Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021). *See also Trump v. Hawaii*, 585 U.S. 667, 746 n.7 (2018) (Sotomayor, J., dissenting) (quoting *id.*) ("I use the term [alien] here only

8

where necessary to 'be consistent with the statutory language' that Congress has chosen and 'to avoid any confusion in replacing a legal term of art with a more appropriate term.'").

To be clear, no human being is illegal. To identify someone as an "illegal alien" does not banish that person from the human race; it simply identifies the individual's immigration status. There is nothing insulting or dehumanizing about using the term alien to indicate that an individual is a non-citizen. Likewise, it is perfectly fitting to acknowledge that an alien who is residing illegally in the United States has broken the law. It has only been recently, within the political context of the current immigration debate, that proper and unambiguous language has come under attack as inaccurate or derogatory. As one circuit judge explained:

> It is an unfortunate trend in caselaw that certain words and expressions are gaining continued acceptance to stand in place of terms and definitions put forth in binding statutes. In this regard, the non-statutory word 'noncitizen' has attained a certain prominence throughout the federal judiciary. *See, e.g. Patel v. Garland*, 596 U.S. 328 (2022). Of course, the term is textually inaccurate as applied to the petitioner in this case, who is a citizen of Mexico. Indeed, most of the petitioners appearing before this Circuit are citizens of one country or another.
>
> Defenders of 'noncitizen' sometimes claim that the word is interchangeable with alien because everyone is a citizen of somewhere . . . . This contention is not an accurate excuse. For one, monarchies exist. A Spanish born person is a 'subject' of the Kingdom of Spain . . . . One born in Saudi Arabia is similarly a 'subject' of the House of Saud. Even more, a person born in American Samoa . . . is a U.S. national, but not a citizen; he or she cannot vote in federal elections nor hold federal office.
>
> These distinctions matter. *Words matter*. Our federal immigration statutes concern themselves with aliens. This

9

> word 'alien' is not a pejorative nor an insult. I certainly did not consider it an insult to be referred to as an alien in my deportation proceedings. Nor is the use of the 'term' alien wholly untethered from its judicial context that it permits being construed in the manner the principal opinion suggests. Alien is a statutory word defining a specific class of individuals. And when used in its statutory context, it admits of its statutory definition, *not* those definitions with negative connotations that can be plucked at will from the dictionary.
>
> I must note that the judiciary's embrace of 'noncitizen' also comes at a real cost to litigants, who are now forced to make a lose-lose choice. One the one hand, the litigant could decide to use the statutory term 'alien' in his briefing before the court, which risks offending devotees to 'noncitizen.' On the other hand, a litigant could decide to use the non-statutory term 'noncitizen' in his briefing before the court, at the risk of showing a disdain for statutory definitions. Sadly, this quandry is laid bare by the principal opinion's express association of the statutory term 'alien' with the label 'offensive.' By intimating that 'alien' in its statutory context has this meaning, the majority has substantiated the concern that a contingent of judges will respond negatively to the term, even though its neutral, statutory definition governs this case.

*Avilez v. Garland*, 69 F.4th 525, 543-44 (9th Cir. 2023) (Bea, Circuit Judge, concurring).

A movement has arisen whose object is to substitute euphemism for precision. A variety of motivations underlie this effort, but regardless of intent, those who object to the use of the term "alien" appear to believe that if they can convince the American public that illegal immigration is not really illegal, then amnesty no longer is amnesty, and enforcing immigration law is unnecessary. George Orwell recognized this process of changing the terms of discussion through changing the language. He termed the result "Newspeak." George Orwell, *1984* (1949). It is nothing more than a tool to limit freedom of thought and clear expression on all matters pertaining to immigration.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction should be GRANTED.

Dated: June 25, 2024                          Respectfully submitted,

                                                /s/ Adam C. Draper

                                                Adam C. Draper
                                                NC Bar No.16612
                                                Draper Law Firm, PC
                                                PO Box 21521
                                                Winston Salem, NC 27120
                                                Tel: 336.765.5700
                                                Fax: 336.765.5725
                                                adam@lexpacis.com

                                                Gina M. D'Andrea
                                                DC Bar No. 1673459
                                                Immigration Reform Law Institute
                                                25 Massachusetts Ave NW, Suite 335
                                                Washington, DC 20001
                                                202.232.5590
                                                gdandrea@irli.org

                                                *Attorneys for amicus curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.3(d) and 7.5(d), the undersigned certifies that the foregoing *amicus curiae* brief does not exceed 6,250 words and is in compliance with these rules. The total word count is 3,409. The undersigned relied on the word count feature on the software utilized to draft this brief, and the word count includes the body of the brief, headings, and footnotes. The word count does not include the caption, signature lines, certificate of service, and any cover page or index.

Dated: June 25, 2024                                  Respectfully submitted,

                                                          /s/ Adam C. Draper

## CERTIFICATE OF SERVICE

I certify that on July 19, 2024 the foregoing document was served electronically on all parties by filing on the court's CM/ECF system.

/s/ Adam C. Draper