# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## No. 24-CV-380

| | |
|---|---|
| C.M., *a minor, through his parents*, LEAH MCGHEE AND CHAD MCGHEE,<br><br>Plaintiff,<br><br>v.<br><br>DAVIDSON COUNTY BOARD OF EDUCATION; *and* ERIC R. ANDERSON, *in his individual capacity*,<br><br>Defendants. | **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>**ORAL ARGUMENT REQUESTED PURSUANT TO LR 65.1(b)** |

Troy D. Shelton
N.C. State Bar No. 48070
tshelton@dowlingfirm.com
Craig D. Schauer
N.C. State Bar No. 41571
cschauer@dowlingfirm.com
DOWLING PLLC
3801 Lake Boone Trail, Suite 260
Raleigh, North Carolina 27607
Telephone: (919) 529-3351

Dean McGee (*pro hac vice*)
James McQuaid (*pro hac vice*)
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400

dmcgee@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff C.M., a minor, through his parents, Leah McGhee and Chad McGhee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

    I.    Plaintiff is likely to succeed on the merits of his First Amendment Claim. ................................................................................... 3

        a.    Defendants' new post-hoc rationalizations for Plaintiff's suspension are unavailing. ........................................... 3

        b.    Defendants' factual narratives clarify that Plaintiff was not the source of any classroom disruption. ........................ 5

        c.    Defendants cannot justify suspension in the absence of disruption caused by Plaintiff ..................................... 9

    II.    Plaintiff is likely to succeed on the merits of his due process claim. ............................................................................... 10

    III.    In arguing that Plaintiff will not suffer irreparable harm, Defendants disregard the harm inherent in a First Amendment violation. ............................................................. 13

    IV.    The balance of equities weighs in Plaintiff's favor, and an injunction protecting constitutional rights is always in the public interest ........................................................................ 14

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Berger v. Battaglia,*
  779 F.2d 992 (4th Cir. 1985) ............................................................................... 6

*Bethel School District No. 403 v. Fraser,*
  478 U.S. 675 (1986) .............................................................................................. 7

*Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.,*
  832 F. App'x 802 (4th Cir. 2020) ........................................................................ 9

*Doe v. Rockingham Cty. Sch. Bd.,*
  658 F. Supp. 403 (W.D. Va. 1987) .................................................................... 13

*Elrod v. Burns,*
  427 U.S. 347 (1976) ............................................................................................ 13

*Goss v. Lopez,*
  419 U.S. 565 (1975) ............................................................................................ 11

*Hardwick v. Heyward,*
  711 F.3d 426 (4th Cir. 2013) ..................................................................... 7, 8, 9

*Heward v. Board of Education of Anne Arundel County,*
  No. 1:23-cv-00195, 2023 U.S. Dist. LEXIS 174960,
  (D. Md. Sept. 29, 2023) ........................................................................ 4, 6, 10, 12

*Hillman v. Elliott,*
  436 F. Supp. 812 (W.D. Va. 1977) .................................................................... 12

*Kowalski v. Berkeley County School,*
  652 F.3d 565 (4th Cir. 2011) ............................................................................ 12

*Mahanoy Area School District v. B.L.,*
  594 U.S. 180 (2021) .............................................................................................. 7

*Montano v. INOVA Health Care Servs.,* No. 1:08cv565 (GBL),
  2008 U.S. Dist. LEXIS 93042 (E.D. Va. Nov. 12, 2008) ............................... 10

*New Jersey v. T.L.O.,*
  469 U.S. 325 (1985) .............................................................................................. 8

*Newsom v. Albemarle Cty. Sch. Bd.,*
  354 F.3d 249 (4th Cir. 2003) ...................................................................... 13, 14

*Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.,*
  969 F.3d 12 (1st Cir. 2020) ................................................................................. 4

*Rock for Life-UMBC v. Hrabowski*,
  411 F. App'x 541 (4th Cir. 2010) ................................................................. 6

*Starbuck v. Williamsburg James City Cty. Sch. Bd.*,
  No. 4:18cv63, 2020 U.S. Dist. LEXIS 237077 (E.D. Va. Nov. 20, 2020) ...... 11

*Starbuck v. Williamsburg James Cty. Cnty. Sch. Bd.*,
  28 F.4th 529 (4th Cir. 2022) ............................................................................. 3

*Wofford v. Evans,*
  390 F.3d 318 (4th Cir. 2004) ....................................................................... 12

**Statutes**

  N.C.G.S. 115C-390.6 ........................................................................................ 13

# PRELIMINARY STATEMENT

In their Opposition Brief, Defendants impermissibly attempt to rewrite the narrative underlying C.M.'s suspension—in conflict with both their official suspension records and the recorded conversation between C.M.'s parents and Defendant Anderson. But even within their rewritten narrative, the core First Amendment violation remains clear: C.M. was punished harshly because he used the phrase "illegal" alien which, despite having a long history as a legally accurate and neutral phrase, was declared by Defendants (without warning) to be so "offensive" that it justified punishment on par with use of the most heinous racial slurs. With that background, the Opposition fails to rebut Plaintiff's Motion for the following reasons:

*First*, Defendants fail to rebut Plaintiff's likelihood of success on the merits of his First Amendment claim. As a threshold matter, Defendants are not permitted to submit new narratives that are refuted by their own documentation and recorded admissions. In any event, Defendants continue to justify the suspension by declaring, without support, that the phrase "illegal aliens" is so "offensive" that punishment is necessarily justified. But under Supreme Court and Fourth Circuit precedent, an administrator's subjective feeling of "offense" cannot be the basis upon which students are

punished. Nor can Defendants justify the suspension by declaring that other students were offended, as this would endorse a "heckler's veto" in violation of Fourth Circuit precedent.

*Second*, Defendants attempt to downplay their due process violation—the denial of any right to appeal—by characterizing the suspension as "minor." But the Fourth Circuit has never held that a three-day out-of-school suspension may, as a matter of law, be levied without the opportunity to appeal. In any event, the new narratives introduced by Defendants in litigation support Plaintiff's allegation that he was denied due process in connection with the suspension.

*Third*, Defendants disregard C.M. and his mother's concrete assertions of irreparable harm resulting from the denial of a preliminary injunction, and instead substitute their own speculation that he would not be harmed. Putting aside the obvious harm of branding a child as racist in his school records, the likely chilling of a student's protected speech is sufficiently harmful to support a preliminary injunction.

*Lastly*, the balancing of equities and consideration of the public interest favor a preliminary injunction, as Defendants fail to articulate any concrete harm that they would suffer from a preliminary injunction, whereas the

harm to C.M. from the suspension, and the harm to the public arising from constitutional violations, is evident.

## I. Plaintiff is likely to succeed on the merits of his First Amendment Claim.

### a. Defendants' new post-hoc rationalizations for Plaintiff's suspension are unavailing.

Defendants' official record of the incident is set forth in the "detailed description" of the Suspension Notification:

> C.M. made a racially insensitive comment, in class today, about an alien 'needing a green card.'

L. McGhee Decl. Ex. 1 (ECF No. 5-3). Defendant Anderson also confirmed that C.M. was punished "harshly" because he believed the phrase "illegal alien" deserved suspension on par with "saying the n word" (while bafflingly suggesting that it would have been preferable to say "those people" who "need a green card.") L. McGee Decl. Ex. 2 (ECF No. 5-4). This is the official record of the incident; any attempted "post hoc rationalizations asserted only after the start of litigation to defeat a . . . First Amendment claim" are impermissible. *Starbuck v. Williamsburg James Cty. Cnty. Sch. Bd.,* 28 F.4th 529, 537 (4th Cir. 2022) (quoting *Norris ex rel. A.M. v. Cape Elizabeth Sch.*

3

*Dist.*, 969 F.3d 12, 26–28 (1st Cir. 2020)).[1] For example, in *Heward v. Board of Education of Anne Arundel County,* a student who painted her face gold to support a sports team was wrongfully accused of wearing "black face" and suspended for a "bias motivated" incident. 2023 U.S. Dist. LEXIS 174960, at *128-131 (D. Md. Sept. 29, 2023). After the minor initiated litigation under the First and Fourteenth Amendments, the court prohibited the school board from attempting to "retreat from the claim of a substantial disruption" by asserting that the student was actually "suspended for engaging in 'cyberbullying and harassment,'" recognizing that such claims were inconsistent with the suspension record. *Id.* at *96-106.

Here, Defendants effectively attempt a similar post-hoc rationalization, asserting that C.M. was punished not because of the wording of his question but because of the "manner in which it was delivered," and because Defendants assumed (wrongly and without evidence) that C.M. somehow knew that a classmate's stepfather had been in the country illegally. Opp. Br. at 5.[2] Defendants now cite additional policies they allege were violated,

---

[1] Defendant's assertion that "[a] school board may shift its description of the reason for a suspension without violating Fourteenth Amendment Due Process" (Opp'n Br. 14) mischaracterizes *Starbuck*, which merely acknowledged that it is was not a violation of due process when a school board "used slightly different words to describe the basis." 28 F.4th at 13.

[2] As in *Heward*, the Court should credit Plaintiff's assertion that he "never intended to demean or ridicule anyone." *Id.* at 106.

4

including policies "regarding civility and integrity." Opp. Br. at 14. And Defendants also assert, for the first time, that C.M. was punished due to conduct from four months earlier. *Id.* These assertions simply cannot be reconciled with either the plain text of the Suspension Notification, or with Defendant Anderson's contemporaneous words to C.M.'s mother, in which Anderson repeatedly emphasized that C.M. was a "great kid" who did not intentionally say anything racist. L. McGee Decl. Ex. 2 at 6:00, 8:25, 13:35.

### b. Defendants' factual narratives clarify that Plaintiff was not the source of any classroom disruption.

Defendants attempt to emphasize the "disruption" that occurred in class, but their own submissions clarify that any meaningful disruption in class was caused by C.M.'s classmate, R, who threatened physical violence. This is admitted by their teacher, who acknowledges that it was R's threat of violence against C.M. that caused her to stand in between the two boys, and that it was "another threat to C.M."—made by R long after C.M.'s initial question—that caused her to call Defendant Anderson. Hill Decl. ¶¶ 10-14. Despite this, R received only a brief in-school suspension, while C.M. received a three-day out-of-school suspension.

Defendants essentially argue that R's seemingly violent reaction to C.M.'s question is, itself, justification to harshly punish C.M. But "[i]t is a

5

fundamental principle of First Amendment jurisprudence that a listener's reaction to speech is not a content-neutral basis for regulation." *Heward*, 2023 U.S. Dist. LEXIS 174960, at *104 n.33. Indeed, "[s]uspension of a student in order to appease other students who might possibly take offense to certain speech, or out of fear of a potential disturbance, is somewhat akin to a 'heckler's veto,'" and the Fourth Circuit has recognized the "heckler's veto" as "one of the most persistent and insidious threats to first amendment rights." *Id.* (quoting *Berger v. Battaglia*, 779 F.2d 992, 1001 (4th Cir. 1985)).[3]

Ultimately, "[t]he feelings of the student[] who w[as] offended or angered are important, of course . . . [b]ut that does not mean that [C.M.'s] conduct was intended in the way others interpreted it." *Heward*, 2023 U.S. Dist. LEXIS 174960, at *102. And given Defendants' concession that it was the threats of physical violence from a classmate that caused the actual disruption in class, the fact that the classmate was only subjected to one day of in-school suspension further underscores the fact that C.M. was punished harshly for pure protected speech, based on the subjective perspective of administrators that such speech was "offensive." Defendants' own cited authorities demonstrate that this is impermissible. For example, in *Mahanoy*

---

[3] *See also Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 554 (4th Cir. 2010) ("Courts have recognized a heckler's veto as an impermissible form of content-based speech regulation for over sixty years.")

*Area School District v. B.L.*, cited by Defendants for the proposition that "schools are allowed considerable freedom to discipline students" (Opp. Br. at 13), the Supreme Court recognized that even though a student's conduct "upset some students" and "caused students to ask some questions about the matter during an algebra class," such facts did not constitute a "substantial disruption" justifying a suspension for otherwise protected speech. 594 U.S. 180, 210 (2021) ("Speech cannot be suppressed just because it expresses thoughts or sentiments that others find upsetting, and the algebra teacher had the authority to quell in-class discussion of B.L.'s messages and demand that the students concentrate on the work of the class.").

Defendants' other cited authorities also do not support their position. In *Bethel School District No. 403 v. Fraser*, for example, the Supreme Court upheld a student's suspension for a sexually suggestive speech at an assembly under its policy banning "obscenity." But that suspension was upheld only after the evidentiary record showed that teachers had warned the student prior to his speech that it was "inappropriate" under school policy and that the student would face "severe consequences" if he delivered it. 478 U.S. 675, 678 (1986). Similarly, in *Hardwick v. Heyward*, 711 F.3d 426 (4th Cir. 2013), the Fourth Circuit rejected a challenge to a South Carolina school's dress code prohibiting disruptive, offensive, obscene, profane or

7

Case 1:24-cv-00380-LCB-LPA   Document 44   Filed 02/25/25   Page 11 of 19

derogatory clothing—a policy that was interpreted to prohibit displays of the confederate flag. But *Hardwick* considered the unique history of confederate imagery, the long history of disruptions at the school caused by confederate imagery, and the school's consistent and repeated warnings to the student, prior to punishment, that its policy prohibited confederate flag apparel:

> The school officials explicitly informed [the student] on multiple occasions that Confederate flag shirts were not permitted under the dress codes. The dress codes were therefore interpreted by the school officials for [the student] in the specific context of her shirts. Nothing in the record plausibly supports any claim that she was unaware of this prohibition on Confederate flag apparel.

*Hardwick*, 711 F.3d at 442.[4]

Here, Defendants fail to proffer any evidence similar to that relied upon by the *Hardwick* court—they establish no history of disruption or bigotry regarding the phrase "illegal alien" and no history of warnings toward students about use of the phrase. Instead, the record on this motion establishes that no student could reasonably have gleaned the phrase "illegal aliens" to be a violation of the schools' policies, but for the administrators' own subjective aversion to the phrase, expressed only after it was used by the student.

---

[4] *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) has nothing to do with unconstitutional speech restrictions—it is about whether the Fourth Amendment applies to searches by school officials.

8

### c. Defendants cannot justify suspension in the absence of disruption caused by Plaintiff.

Tacitly recognizing that any classroom disruption was caused not by C.M. but by a classmate's threat of violence, Defendants assert that suspension was nevertheless justified because "schools may restrict vulgar and offensive speech absent evidence of substantial interference." Opp. Br. at 13. While it is true that courts have recognized some limited exceptions to *Tinker's* substantial disruption requirement, Defendants must still justify punishment with evidence that the punished speech fits within those exceptions. *See, e.g.*, *Hardwick*, 711 F.3d at 442 (setting forth the history of confederate flag imagery and the school's rationale for restricting its use).[5]

Here, Defendants provide no evidence to refute the race-neutral history of the phrase "illegal aliens" set forth in in Plaintiff's opening brief, including use by statute, news media, and jurists from this District to the Supreme

---

[5] Defendants' reliance on *Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.* is misplaced, as that case involved a student's explicit and repeated violations of a school's restrictions on vulgar speech, including multiple sexually inappropriate jokes and physical touching of a female student. 832 F. App'x 802, 806 (4th Cir. 2020).

9

Court. Pl. Br. pp. 9-11.[6] This Court should reject Defendants' continued evidence-free assertions that "illegal alien" is a phrase intended to stereotype "persons of Hispanic Latino descent" (Opp. Br. at 11). At worst, "the facts cited by defendants [reflect] poor taste and immature judgment"—a showing that is insufficient to justify suspension under *Tinker*'s substantial disruption test or the limited exceptions to it. *Heward*, 2023 U.S. Dist. LEXIS 174960, at *97.

## II. Plaintiff is likely to succeed on the merits of his due process claim.

The Court should reject Defendants' attempt to belittle the suspension as a "short term" suspension not requiring meaningful procedural due process protections (Opp. Br. 15-18).

Defendants do not dispute that C.M. has a property interest in his education and a liberty interest in his "good name, reputation, honor, or integrity" which, if put in jeopardy through academic records, "could seriously damage [his] standing with [his] fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment."

---

[6] Defendants' only citation to the phrase "illegal alien" in a court decision (Opp. Br. at 11 n.2) determined that the use of that phrase did not constitute workplace harassment. *Montano v. INOVA Health Care Servs.*, No. 1:08cv565 (GBL), 2008 U.S. Dist. LEXIS 93042, at *9 (E.D. Va. Nov. 12, 2008).

10

*Goss v. Lopez*, 419 U.S. 565, 574-75 (1975). As such, C.M. was entitled to due process. *Id.* at 579.

Applying *Goss*, the Fourth Circuit addressed a due process challenge in *Starbuck*. There, the court found that a two-day suspension "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." 28 F.4th at 536 (quoting *Goss*, 419 U.S. at 575). In finding that the school satisfied its due process obligations, the Fourth Circuit looked to the student's "multiple opportunities to characterize his conduct" both to administrators and when "appealing [the suspension] to the School Board." *Id.* at 537. The *Starbuck* district court likewise focused its due process analysis on the students' opportunity to "have an informal meeting with the [school board] to allow them to present their version of the facts . . . and allow new evidence found under the second scope of the investigation." *Starbuck v. Williamsburg James City Cty. Sch. Bd.*, No. 4:18cv63, 2020 U.S. Dist. LEXIS 237077, at *17 (E.D. Va. Nov. 20, 2020). Similarly, in *Hewer*, "K.H.'s parents were permitted to appeal the decision to issue K.H. a suspension and were

repeatedly afforded the opportunity to present any and all arguments for rescinding the suspension of K.H." 2023 U.S. Dist. LEXIS 174960, at *125.[7] C.M. and his parents, by contrast, were not provided with any opportunity to appeal outside of a brief conversation with Defendant Anderson.[8]

In addition, Defendants' shifting, post-hoc, litigation-tailored rationalizations for Plaintiff's suspension underscore Plaintiff's likelihood of success on his due process claim. In *Heward*, for example, the court denied a school district's motion to dismiss where the school's suspension notification "did not include all of the[] findings" being used to justify suspension in litigation. *Id.* at 128-29. As discussed above, Defendants have engaged in

---

[7] *See also Hillman v. Elliott,* 436 F. Supp. 812, 815 (W.D. Va. 1977) (due process was satisfied because "plaintiff and his parents received written notice of the charges and were advised of a hearing before the principal at which they had the right to be present, to have a representative with them, and to speak in plaintiff's behalf. Plaintiff was afforded two appeals, both of which he utilized").

[8] Defendants' cited authorities do not undermine Plaintiff's due process claim. For example, in *Kowalski v. Berkeley County School*, 652 F.3d 565, 576 (4th Cir. 2011), the due process analysis was impacted by the student's admission that she violated the school's policies—something that C.M. denies here. And *Wofford v. Evans* addressed the unique needs of a school to promptly address the threat of a student carrying a gun to school—facts which are plainly inapposite here. 390 F.3d 318, 325 (4th Cir. 2004).

12

similar conduct here, shifting the justification for Plaintiff's suspension to meet the needs of litigation.[9]

### III. In arguing that Plaintiff will not suffer irreparable harm, Defendants disregard the harm inherent in a First Amendment violation.

As set forth in Part A.2 of the Motion, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). *See also Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (endorsing *Elrod* while holding that a district court abused its discretion in denying a student's preliminary injunction to halt enforcement of a school's overbroad dress code).

Defendants disregard this binding precedent—a tacit admission that it is dispositive. In any event, harm caused by tarnishing a student with the brand of racism as he begins to apply to colleges is both self-evident and detailed in the Declarations of C.M. and his mother (C.M. Decl. ¶¶12-15; L. McGhee Decl. ¶¶ 35-36). By contrast, in cases regarding unconstitutional

---

[9] Defendants' citation to N.C.G.S. 115C-390.6 (Opp. Br. 16) is a red herring; the school is obligated to provide constitutional due process regardless of the state's statutory scheme. *See Doe v. Rockingham Cty. Sch. Bd.*, 658 F. Supp. 403, 407 (W.D. Va. 1987) ("The necessity of a prompt hearing is a constitutional prerequisite despite the fact that Virginia's statutory law appears to [the contrary].")

13

suspensions, the Fourth Circuit has held that a defendant school "is in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation, which, on this record, is likely to be found unconstitutional." *Newsom*, 354 F.3d at 261.

### IV. The balance of equities weighs in Plaintiff's favor, and an injunction protecting constitutional rights is always in the public interest.

As with their irreparable harm arguments, Defendants disregard binding precedent cited in Part A.3 of the Motion establishing that injunctions prohibiting likely violations of constitutional rights are necessarily in the public interest and virtually always require ruling in favor of the plaintiff in First Amendment cases. *See also Newsom*, 354 F.3d at 261 ("The final prerequisite to the grant of a preliminary injunction is that it serve the public interest. Surely, upholding constitutional rights serves the public interest."). The authorities cited by Plaintiffs standing for the general proposition that schools have some leeway in enforcing their policies (Opp. Br. 20-23) are therefore irrelevant and unavailing.

## CONCLUSION

Plaintiff respectfully requests that the Court grant his Motion for Preliminary Injunction.

Dated: February 25, 2024    /s/ Troy D. Shelton
Troy D. Shelton
N.C. State Bar No. 48070
tshelton@dowlingfirm.com
Craig D. Schauer
N.C. State Bar No. 41571
cshelton@dowlingfirm.com
DOWLING PLLC
3801 Lake Boone Trail, Suite 260
Raleigh, North Carolina 27607
Telephone: (919) 529-3351

/s/ Dean McGee
Dean McGee
James McQuaid
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
(312) 637-2280 - telephone
dmcgee@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org


*Attorneys for Plaintiff C.M.*

15